**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| W.P., a minor, by and through his parents and guardians KATHRYN PIERCE and CHESTER PIERCE, and A.B., a minor, by and through his parents and guardians, MICHAEL BECK AND JOANNE KEHOE, on behalf of themselves and similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>ANTHEM INSURANCE COMPANIES, INC., an Indiana corporation,<br><br>Defendant. | NO. 1:15-cv-00562-TWP-TAB |

**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND**
**INJUNCTIVE RELIEF**

For years, children suffering from severe autism had few therapeutic options for meaningful improvement.  Treatment options were limited and largely unproven.  Today, however, Applied Behavioral Analysis (ABA) therapy is widely recognized as one of the safest and most effective treatments for autism.  It has been endorsed by numerous state and federal agencies, including the U.S. Surgeon General, the National Institute of Mental Health, the American Psychological Association, and many state Departments of Health.  For many children with autism, ABA therapy often represents the best chance for living a happy and productive life.

For ABA therapy to be effective, however, it cannot be a half-measure.  Forty years of research and thousands of studies have shown that for ABA therapy to work, an autistic child must follow a medically-appropriate ABA program.  Such a program typically consists of up to 40 hours per week of intensive one-on-one teaching.

This case involves W.P., a 14 year-old boy, and A.B., an 11 year-old boy, who both suffer from severe autism.  W.P. has limited verbal skills—he can say approximately five to ten words.  He is able to walk but cannot navigate stairs without assistance.  And he frequently

exhibits repetitive, stereotypic behaviors including rocking, flapping his arms and hands, and heavy breathing.  A.B. also has limited verbal skills—he relies primarily on non-verbal communication and communication devices to express himself.  A.B.'s frustration with his inability to communicate can lead to tantrums that involve A.B. throwing himself on the ground and screaming or otherwise aggressively acting out.  A.B. also exhibits stereotypic behaviors and will run away from adults, which is dangerous when he is outside of his home.

Both W.P. and A.B.'s treating physicians have prescribed ABA therapy to treat their autism.  Each boy's certified ABA therapist designed a treatment plan that requires 40 hours of ABA therapy per week.  This therapy is medically necessary to treat W.P. and A.B.'s autism. When W.P. began the ABA treatment plan designed by his therapist, W.P.'s parents observed almost immediate improvements in W.P.'s ability to walk, use words, and respond appropriately to prompts.  His stereotypic behaviors also decreased.  When A.B. was receiving the complete ABA therapy program prescribed by his doctors, A.B. made significant progress with toilet training and the use of a pictorial communication system to get items he wants.

Despite W.P.'s dramatic improvement, in July 2013, Anthem Insurance Companies denied W.P.'s therapist's request for authorization of 40 hours of ABA therapy per week and reduced the number of authorized hours to 25.  In July 2014, Anthem further reduced the number of authorized hours to 20.  In denying W.P.'s request for benefits, Anthem sent W.P. and his family letters explaining its coverage decisions.  Anthem wrote that it would not "approve ABA therapy to take the place of services that can be done through the school."

Despite A.B.'s progress, Anthem Insurance Companies denied A.B.'s therapist's request for authorization of 40 hours of ABA therapy per week and reduced the number of authorized hours to 30 in October 2013.  In January 2014, Anthem further reduced the number of authorized hours to 20.  In denying A.B.'s request for benefits, Anthem sent A.B. and his family letters explaining its coverage decisions.  Anthem wrote that it cannot "approve ABA therapy to take the place of services that can be done through the school."  After A.B.'s therapy hours were reduced, his ability to use the toilet and other life skills he had acquired declined.

As a factual matter, Anthem's determination that clinical ABA therapy is available through public schools is wrong. But Anthem's determination also reveals a larger, more disconcerting problem: Anthem has adopted an unlawful policy or practice of limiting coverage for ABA therapy to treat autism. As a result, Plaintiffs W.P. and A.B. and other Indiana children insured by Anthem have been denied access to medically-necessary ABA therapy to treat their autism.

Anthem's policy and practice of limiting coverage for ABA therapy for school-aged children with autism violates the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, because it fails to comply with Indiana law and the federal Mental Health Parity Act. Anthem's policy and practice also breaches Anthem's insurance contracts with subscribers like A.B.

## I.    PARTIES

1.1   <u>Plaintiffs</u>.  Plaintiff W.P., a minor, and his parents, Plaintiffs Kathryn and Chester Pierce, are residents of Elkhart County, Indiana.

1.2   W.P.'s health insurance is provided by his father's employer. W.P. is a beneficiary, as defined by 29 U.S.C. § 1002(8), of an "employee welfare benefits plan," as defined by 29 U.S.C. § 1002(1).

1.3   Anthem is both the insurer and claims administrator for W.P.'s insurance plan.

1.4   At all relevant times, Anthem acted as a fiduciary with respect to W.P.'s plan under ERISA, as defined by 29 U.S.C. § 1002(21)(A).

1.5   Plaintiff A.B., a minor, and his parents, Michael Beck and Joanne Kehoe, are residents of Indianapolis, Indiana.

1.6   A.B.'s parents bought him an "Individual Blue Access" health insurance plan from Anthem.

1.7   The plan was underwritten by Anthem.

1.8   A.B. was a member of the plan from approximately July 1, 2009 to February 28, 2015.

1.9    Defendant.  Defendant Anthem Insurance Companies, Inc. ("Anthem") is an Indiana insurance corporation engaged in the business of insurance in Indiana.

## II.    JURISDICTION AND VENUE

2.1    Subject Matter Jurisdiction.  This Court has subject matter jurisdiction over W.P.'s claims under 29 U.S.C. § 1132(e)(1).  This Court is supplemental jurisdiction over A.B.'s claims under 28 U.S.C. § 1367(a) because his claims arise from a challenge to the same policy challenged by W.P.  The facts giving rise to A.B.'s claims are so related to those giving rise to W.P.'s claims that they form part of the same case on controversy.  Joinder of A.B.'s claims with W.P.'s claims is proper under § 1367(a).

2.2    Personal Jurisdiction.  This Court has personal jurisdiction over Defendant because Anthem transacts business in Indiana.

2.3    Venue.  Venue is proper in the District of Indiana under 29 U.S.C. § 1132(e)(2) because Anthem resides in Indiana and the breach took place in Indiana.  Venue is also proper under 28 U.S.C. § 1391(b) because Anthem resides in this district and the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## III.    AUTISM AND ABA THERAPY

3.1    Autism spectrum disorders, also referred to as pervasive developmental disorders, are neurological conditions characterized by "persistent deficits in social communication and social interaction across multiple contexts" and "restricted, repetitive patterns of behavior, interests, or activities."  Am. Psychiatric Ass'n, Autism Spectrum Disorder, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) ("DSM-V").  In order for a child to be diagnosed with autism, symptoms must be present in early developmental periods and cause "clinically significant impairment in social, occupational, or other important areas of current functioning."  *Id.*

3.2    According to the most recent estimates from the Centers for Disease Control and Prevention, one in every sixty-eight American children has been diagnosed with an autism

spectrum disorder.  *See* CDC, *Prevalence of Autism Spectrum Disorder Among Children Aged 8 Years*, Morbidity and Mortality Weekly Report (Mar. 28, 2014), *available at* http://www.cdc.gov/mmwr/preview/mmwrhtml/ss6302a1.htm?s_cid=ss6302a1_w.

3.3     Applied Behavioral Analysis ("ABA") therapy is widely accepted as the most effective form of therapy for autistic children.  Caroline Giordano, *Uses of the Class Action Device in Autism Health Benefits Litig.*, 58 Wayne L. Rev. 157, 161 (2012).  ABA therapy is a form of behavioral conditioning that "involves repetitive, task-and-reward-based activities designed to teach children skills such as imitating others, making eye contact, listening, and appropriately answering questions."  *Id.*

## IV.     INDIANA'S AUTISM COVERAGE MANDATE

4.1     In 2001, Indiana adopted one of the most comprehensive autism coverage mandates in the country.  *See* Ind. Code §§ 27-8-14.2, 27-13-7-14.7.  Indiana's autism coverage mandate requires insurers to cover treatment for autism that is prescribed by a physician as part of a treatment plan, and the mandate prohibits insurers from limiting autism coverage with special caps or deductibles.  *Id.*

4.2     Insurers may review a physician's treatment plan for medical necessity.  Ind. Dep't of Ins., Bulletin 136, *Insurance Coverage for Pervasive Developmental Disorders*, at 1 (Mar. 30, 2006).  An insurer must consult with the treating physician when reviewing a treatment plan for medical necessity.  *Id.* at 1–2.  An insurer's challenge to medical necessity "will be viewed as reasonable only if the review is by a specialist in the treatment of [pervasive developmental disorders]."  *Id.* at 1.

4.3     ERISA requires Anthem to process and administer the insurance plans it provides in a manner that complies with the requirements of non-preempted state insurance mandates like Indiana's autism coverage mandate.

4.4     A.B.'s insurance plan includes ABA therapy as a covered service.  Section 10 of A.B.'s plan is entitled "Covered Services."  It states:

### Pervasive Developmental Disorders Services

Coverage is provided for the treatment of pervasive developmental disorders.  Treatment is limited to services prescribed by your Physician in accordance with a treatment.  Pervasive developmental disorder means a neurological condition, including Asperger's syndrome and autism, as defined in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association. Any exclusion or limitation in this Contract in conflict with the coverage described in this provision will not apply.

4.5     Anthem's policy and practice of limiting the number of hours of clinical ABA therapy that Anthem will cover for children age seven or older based on the purported availability of similar "educational" services in public schools violates Indiana's autism coverage mandate and is a breach of the Pervasive Developmental Disorders Services coverage promised in its contracts.

## V.     THE FEDERAL MENTAL HEALTH PARITY ACT

5.1     The Paul Wellstone and Pete Dominici Mental Health Parity and Addiction Equity Act of 2008 ("Federal Parity Act") precludes group health insurance plans that cover mental health services from imposing financial requirements or treatment limitations on mental health benefits that are more restrictive than the requirements and limitations imposed on "substantially all medical and surgical benefits."  29 U.S.C. § 1185a; 42 U.S.C. § 300gg-26.

5.2     Under the Federal Parity Act, an insurer covering mental health services must provide coverage that is "in parity" with medical and surgical benefits.

5.3     Clinical ABA therapy is a mental health service.

5.4     Anthem's policy and practice of limiting the number of hours of it will cover for children age seven or older based on the purported availability of similar "educational" services in public schools is a treatment limitation that is not imposed on medical surgical benefits, in violation of the Federal Parity Act.

5.5     ERISA requires Anthem to process and administer the insurance plans it provides in a manner that complies with the requirements of non-preempted federal substantive law, including the Federal Parity Act.

## VI.     PLAINTIFF W.P.'S FACTUAL ALLEGATIONS

6.1     W.P. is a 14 year-old boy who has been diagnosed with autism by his treating physician.  His treating physician referred W.P. to a Board Certified Behavior Analyst for clinical ABA therapy to treat his autism.  W.P.'s treating physician has approved the treatment plan developed by his ABA therapist.

6.2     W.P. receives ABA therapy at the Behavior Analysis Center for Autism ("BACA") in Elkhart, Indiana.  W.P.'s therapy is overseen by Board Certified Behavior Analysts.

6.3     In February, 2011, W.P. began receiving ABA therapy at a BACA facility in Fishers, Indiana.

6.4     W.P.'s parents observed nearly immediate improvements in his health.

6.5     For example, W.P.'s motor skills, including his ability to walk, improved.  He lost weight.  His vocal skills improved and he began to say more words.  W.P.'s repetitive, stereotypic behaviors—including rocking, flapping his hands, and heavy breathing—also decreased.

6.6     BACA subsequently opened a facility in Elkhart, and W.P. is currently receiving services there.

6.7     W.P.'s treatment plan calls for 40 hours of ABA therapy per week.  W.P.'s prior insurer covered the 40 hours per week of ABA therapy called for by his treatment plan.

6.8     In approximately February 2013, Chester Pierce's employer changed from another employee health insurance provider to Anthem.  Initially, Anthem covered the 40 hours of ABA services called for in W.P.'s treatment plan.

6.9     In July 2013, however, Anthem reduced the number of hours of ABA therapy it authorized for coverage to 25.  Anthem subsequently reduced the number of covered hours to 20.

6.10    Since July 2013, W.P. has received only 20 or 25 hours of ABA therapy per week because Anthem has denied coverage for the remaining hours.

6.11    W.P.'s family cannot afford to pay out of pocket for the therapy Anthem refuses to cover.

6.12    In July 2014, Anthem sent W.P.'s family a letter limiting W.P.'s coverage for ABA therapy to 20 hours per week.  A copy of the denial letter is attached hereto as Exhibit A.

6.13    Anthem determined that the treatment plan created by W.P's therapists and approved by his treating physician provides "educational" services.  The denial letter states in part: "[w]e cannot approve ABA therapy to take the place of services that can be done through the school."

6.14    As the text of the letter shows, Anthem's refusal to fully cover the clinical ABA therapy set out in W.P's treatment plan is based on Anthem's determination that the clinical services he needs are available through public schools.

6.15    Anthem's conclusion is incorrect.  Clinical ABA services are unavailable in Indiana public schools.

6.16    W.P.'s family filed a written appeal of Anthem's July 29, 2014 coverage decision. Anthem issued a written denial of the appeal on October 31, 2014.  A copy of the letter denying W.P.'s family's internal appeal is attached hereto as Exhibit B.  Anthem's letter denying W.P.'s family's appeal states in part: "We cannot approve ABA to take the place of services that are available to the member through IDEA."

6.17    W.P.'s family exhausted their mandatory appeal rights.

6.18    On information and belief, Anthem has adopted a policy and practice of reducing coverage for ABA therapy to between 20 and 25 hours per week for children age seven or older.

6.19    Anthem's coverage determinations are based on the impermissible and erroneous determination that public schools are required under Individuals with Disabilities Education Act ("IDEA") to provide clinical ABA therapy to autistic children.

6.20    Anthem announced this policy and practice, which took effect on May 11, 2012, to the parents of insured autistic children in a form letter.  A copy of a preliminary draft of the letter is attached hereto as Exhibit C.

6.21    The letter explains that as part of its review of individual treatment plans for "medical necessity," Anthem will "determine whether services during school hours are available to the member though the public school system."  Anthem explained that it would conduct this review regardless of whether the insured child actually attends public school because "appropriate public school services are available to all children with PDD, as required by the IDEA."

6.22    Anthem's determinations improperly conflate clinical ABA therapy with the educational services provided by Indiana public schools.

6.23    Three Anthem employees—Dr. Madeline Kolar, Dr. Elizabeth S. Bonnano, and Dr. Timothy Kennedy—review treatment plans that include ABA therapy for children age seven or older.  On information and belief, these individuals are not specialists in the treatment of pervasive developmental disorders or autism.

6.24    In January 2015, Anthem contacted W.P.'s ABA therapy provider and made a "take-it-or-leave-it" offer to temporarily increase the number of hours authorized to 25 in exchange for W.P.'s family giving up any appeal rights.

## VII.    PLAINTIFF A.B.'S FACTUAL ALLEGATIONS

7.1    A.B. is an 11 year-old boy.  A.B.'s board certified developmental-behavioral pediatrician diagnosed him with autism when he was three years old.

7.2    A.B.'s parents purchased an Individual Blue Access Plan from Anthem and paid all premiums required by the his plan for coverage from approximately July 1, 2009 to February 28, 2015.  A.B. was a member of an Anthem individual plan during that period.

7.3    A copy of the Health Contract that Anthem issued to A.B. is attached hereto as Exhibit D.

7.4     A.B.'s treating physician approved as medically necessary a treatment plan providing 40 hours per week of ABA therapy and 4 hours per week of Board Certified Behavior Analyst supervision of the therapy.

7.5     A.B. receives ABA therapy at the Little Star Center in Carmel, Indiana.  A.B.'s therapy is overseen by a Board Certified Behavior Analyst.

7.6     A.B. began receiving ABA therapy at Little Star Center in 2009.

7.7     Between 2009 and October of 2013, A.B. received the 40 hours per week of therapy called for by his treatment plan and made progress in acquiring life skills such as washing his hands, brushing his hair and teeth, feeding himself, communicating using a system of pictures, and using the toilet.

7.8     During that time period, Anthem covered all hours of ABA therapy included in A.B.'s treatment plan.

7.9     A.B. turned eight years old in June 2013.

7.10    In October 2013, A.B.'s certified ABA therapist requested that Anthem again authorize coverage for A.B.'s treatment plan requiring 40 hours for ABA therapy per week, with 4 hours per week of supervision by his Board Certified Behavior Analyst.

7.11    Anthem denied the request, authorizing coverage for only 30 hours of ABA therapy per week for October 1 to December 31, 2013 and only 20 hours of ABA therapy from January 1 to February 3, 2014.  Little Star Center appealed the denial on behalf of A.B. and his family.  A true a correct copy of Anthem's letter denying that appeal is attached hereto as Exhibit E (March 13, 2014 letter).

7.12    According to Anthem, the coverage was "tapered" down to 20 hours per week. Anthem characterized the clinical ABA therapy included in A.B.'s treatment plan as "educational" and stated that it would not approve "ABA therapy to take the place of services that can be done through the school."

7.13     Little Star Center filed a second level appeal of Anthem's decision denying coverage for the ABA therapy required by A.B.'s treatment plan.  A copy of the letter denying the second level appeal is attached hereto as <u>Exhibit F</u> (May 21, 2014 letter).

7.14     Little Star Center also requested an external review of Anthem's decision.  The external reviewer again upheld the denial of coverage.

7.15     A.B.'s family fully exhausted Anthem's Grievance and Appeal procedures.

7.16     A.B.'s family cannot afford to pay out of pocket for the therapy Anthem refuses to cover.  After the external review decision, in August 2014, A.B. began receiving only 20 hours per week of therapy.

7.17     In 2015, Anthem again denied A.B.'s provider's request for authorization of coverage of all hours included in the treatment plan approved by his doctors.  A true and correct copy of the denial letter is attached hereto as <u>Exhibit G</u>.

7.18     As the text of Exhibits E, F, and G shows, Anthem's refusal to fully cover the clinical ABA therapy set out in A.B.'s treatment plan was based on Anthem's determination that the clinical services he needs are available through public schools.

7.19     Anthem's coverage determination in A.B.'s case was based on the same impermissible policies or practices described above in paragraphs 6.18–6.23.

## VIII.   CLASS ALLEGATIONS

8.1     Class Definitions:

8.2     The ERISA Plan Class consists of all individuals who: (1) have been, are, or will be beneficiaries of an ERISA-governed health plan that has been or will be delivered, issued for delivery, or renewed on or after April 9, 2012 by defendant Anthem in the State of Indiana; (2) have been, are, or will be seven or older; (3) have been, are, or will be diagnosed with a pervasive developmental disorder; and (4) have required, require, or will require ABA therapy as part of a treatment plan approved by their treating physician.

8.3     The Individual Plan Class consists of all individuals who: (1) have been or are members of an individual health plan issued by defendant Anthem in the State of Indiana; (2) are

age seven or older; (3) have been diagnosed with a Pervasive Developmental Disorder; and (4) have required ABA therapy as part of a treatment plan approved by their treating physician, within six years prior to the date of the filing of this complaint.

8.4     The definition of the Classes are clear and members of the Classes are easily identifiable on the basis of objective information.  Anthem maintains records of its members and its coverage determinations.  Children seven or older who have been diagnosed with a pervasive developmental disorder and whose providers have sought authorization or reimbursement for ABA therapy as part of a physician-approved treatment plan can be identified from Anthem's records.

8.5     The number of Indiana children age seven or older and whose pervasive developmental disorder requires ABA therapy as part of a physician-approved treatment plan and who are beneficiaries of an ERISA-governed health plan insured by Anthem is expected to number in at least the hundreds and is so large that joinder of all ERISA Plan Class members is impracticable.

8.6    The number of Indiana children age seven or older and whose pervasive developmental disorder requires ABA therapy as part of a physician-approved treatment plan and who subscribe or subscribed to an individual health policy issued by Anthem is expected to number in at least the hundreds and is so large that joinder of all Individual Plan Class members is impracticable.

8.7     Plaintiffs' claims are typical of those of the members of the respective Class each seeks to represent.

8.8     W.P. is over the age of seven and has been diagnosed with a pervasive developmental disorder.  He is a beneficiary of an ERISA-governed health plan insured by Anthem.  As a result of Anthem's unlawful policy and practice, W.P. receives only a portion of the ABA therapy called for in his treatment plan.

8.9    A.B. is over the age of seven and has been diagnosed with a pervasive developmental disorder.  He was a member of an individual health plan issued by Anthem.  As a

result of Anthem's unlawful policy and practice, and breach of its insurance contract, A.B. received only a portion of the ABA therapy called for in his treatment plan.

8.10    Plaintiff W.P is an adequate representative of the ERISA Plan Class, and Plaintiff A.B. is an adequate representative of the Individual Plan Class.

8.11    Plaintiff W.P. has abided by all requirements of his health plan and has exhausted mandatory administrative appeals of Anthem's coverage denial.

8.12    Plaintiff A.B. abided by all requirements of his health plan, paid all premiums, and exhausted mandatory grievance and internal appeals of Anthem's coverage denial.

8.13     Plaintiffs want to ensure that every autistic child in Indiana is able to get needed ABA therapy and will fairly and adequately represent the interests of the Classes.

8.14    Plaintiffs have retained experienced and competent class counsel.  Counsel have the knowledge, experience, and financial resources necessary to prosecute this action on behalf of the Classes.

8.15    There are questions of law or fact common to the ERISA Plan Class, including but not limited to the following:

        a.    Whether the ABA therapy is an "educational" service or clinical therapy;

        b.    Whether Anthem has adopted a policy and practice of limiting coverage for ABA therapy based on non-medical factors such as the purported availability of related services in public schools;

        c.    Whether Anthem's policy and practice violates Indiana's autism coverage mandate;

        d.    Whether Anthem's policy and practice violates the federal Mental Health Parity Act;

        e.    Whether ERISA requires Anthem to abide by Indiana's autism coverage mandate in administering its plans;

        f.        Whether Anthem's policy and practice of failing to cover services that insurers are required to cover under Indiana law breaches Anthem's fiduciary duties to beneficiaries;

        g.        Whether Anthem's coverage determinations are reasonable when they are made by doctors who do not specialize in the treatment of pervasive developmental disorders;

        h.        Whether Anthem has adopted a policy and practice of negotiating coverage of ABA therapy with treatment providers in exchange for providers agreeing not to appeal adverse coverage determinations;

        i.        Whether Anthem's policy and practice of negotiating with providers denies participants and beneficiaries their appeal rights under ERISA; and

        j.        Whether Anthem's coverage determinations are entitled to deference.

    8.16    There are questions of law or fact common to the Individual Plan Class, including but not limited to the following:

        a.        Whether the ABA therapy is an "educational" service or clinical therapy;

        b.        Whether Anthem has adopted a policy and practice of limiting coverage for ABA therapy based on non-medical factors such as the purported availability of related services in public schools;

        c.        Whether Anthem's policy and practice violates Indiana's autism coverage mandate;

        d.        Whether Anthem's policy and practice conflicts  with the coverage described in the Pervasive Development Disorders Services provision of its insurance contract with members;

        e.        Whether Anthem's policy and practice is a breach of its insurance contract with members;

        f.        Whether Anthem acted in bad faith by adopting and applying its policy and practice;

g.      Whether the purported availability of services in public schools is relevant to assessing the medical necessity of services included in an ABA therapy treatment plan approved by a child's treating provider;

h.      Whether Anthem's coverage determinations were based on a concerted effort to reduce costs associated with coverage for ABA therapy rather than the medical necessity of the services for which Anthem denied coverage;

i.      Whether Anthem's policy and practice violates the federal Mental Health Parity Act;

j.      Whether Anthem's coverage determinations are reasonable when they are made by doctors who do not specialize in the treatment of pervasive developmental disorders; and

k.      The nature and extent of the injury to the Individual Plan Class members and the measure of compensation for such injury.

8.17    Anthem has acted on grounds generally applicable to both Classes.  In particular, Anthem has adopted a policy and engaged in a practice that results in the improper limitation of ABA therapy to treat pervasive developmental disorders.  Thus, declaratory relief is appropriate for both Classes.  Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(2).

## IX.   COUNT I (On Behalf of W.P. and the ERISA Plan Class)

### Claim for Recovery of Benefits, Clarification of Rights under the Plan, and Clarification of Right to Future Benefits under the Plan.  29 U.S.C. § 1132(a)(1)(B).

9.1     Plaintiffs re-allege each and every allegation set forth in the proceeding paragraphs.

9.2     ERISA provides that a participant or beneficiary may bring an action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

9.3     W.P. and the ERISA Plan Class are entitled to recover benefits they have been denied on the basis of the improper limitations on ABA therapy described above.

9.4     W.P. and the ERISA Plan Class are entitled to a declaration of present and future rights to benefits for all medically-necessary ABA therapy that is part of a treatment plan approved by a treating physician, without regard to whether other "educational" services may be available in public schools.

## X.     COUNT II (On Behalf of W.P. and the ERISA Plan Class)

**Claim to Enjoin Acts and Practices in Violation of the Terms of the Plan, to Obtain Other Equitable Relief, and to Enforce the Terms of the Plan.  29 U.S.C. § 1132(a)(3).**

10.1     Plaintiffs re-allege each and every allegation set forth in the proceeding paragraphs.

10.2     ERISA provides that a participant or beneficiary may "enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3)(A). A participant or beneficiary may also obtain appropriate equitable relief to redress violations of those provisions.  29 U.S.C. § 1132(a)(3)(B).

10.3     W.P. and the ERISA Plan Class seek to enjoin Anthem from continuing to process and pay claims under its insured plans in a manner that is inconsistent with Indiana's autism coverage mandate and the Federal Parity Act.  In particular, W.P. and the ERISA Plan Class seek to enjoin Anthem's practice of limiting the number of hours ABA therapy covered for non-medical reasons, including the purported availability of similar services in public schools to children age seven or older.

10.4     W.P. and the ERISA Plan Class seek all other appropriate equitable relief to redress Anthem's improper coverage denials, including but not limited to reimbursement, equitable accounting, surcharge, and disgorgement of all profits flowing from the improper denials.

10.5     W.P. and the ERISA Plan Class seek to enjoin Anthem from offering ABA therapy providers "take-it-or-leave-it" deals to temporarily increase the number of hours of

therapy authorized in exchange for participants or beneficiaries giving up their right to appeal coverage denials.

### XI.     COUNT III (On behalf of A.B. and the Individual Plan Class)
### Breach of Contract.

11.1     Plaintiffs re-allege each and every allegation set forth in the proceeding paragraphs.

11.2     The health insurance plans Anthem issues to its members are written contracts supported by consideration.

11.3     Plaintiff A.B. and members of the Individual Plan Class paid insurance premiums that constitute consideration.

11.4     Anthem's individual insurance plans include coverage for "the treatment of pervasive developmental disorders." By their own terms, those plans provide coverage for "services prescribed by [the member's] Physician in accordance with a treatment plan."

11.5     Under the plans: "Any exclusion or limitation in this Contract in conflict with the coverage described in [the Pervasive Development Disorders Services] provision will not apply."

11.6     Anthem breached the contract by denying coverage for services prescribed by the member's physician in accordance with a treatment plan.

11.7     Anthem's denials of coverage were not based on the medical necessity of the services as defined in the plans.

11.8     Even if Anthem's denials were based on the medical necessity of the services as defined in the plans, that is a limitation that "will not apply" to coverage of treatment for pervasive developmental disorders under the plain language of the plans.

11.9     The requirements of the Federal Parity Act are also terms of the plan to the extent that they provide any broader coverage than the express terms of the plan. Anthem breached those terms by adopting a policy and practice of limiting the number of hours of it will cover for children age seven or older based on the purported availability of similar "educational" services

in public schools, which is both a non-quantitative and an age-based treatment limitation that is not imposed on medical surgical benefits.

11.10   A.B. and the Individual Plan Class are entitled to recover actual and consequential damages that flow from the breach of the contract.  These include the amounts A.B. and the Individual Plan Class paid out-of-pocket for ABA therapy and the uncompensated costs of ABA therapy provided to A.B. and the Individual Plan Class by their providers.

11.11   The damages to A.B. and the Individual Plan Class also include the value of hours of ABA therapy that were included in the treatment plans of A.B. and the Individual Plan Class but which A.B. and the Individual Plan Class did not receive because they could not pay for them out-of-pocket.

## XII.    COUNT IV (On behalf of A.B. and the Individual Plan Class)
### Bad faith breach of insurance contract.

12.1    Plaintiffs re-allege each and every allegation set forth in the proceeding paragraphs.

12.2    Anthem's breach of its insurance contracts as set forth in paragraphs 8.2–8.8 were in bad faith.

12.3    Anthem acted in bad faith when it knowingly adopted an illegal policy and practice of reducing coverage for ABA therapy based on the purported availability of similar services in public schools.

12.4    Anthem made a conscious decision to adopt this "new" policy in or around May 2012.  *See* Exhibit C.

12.5    Indiana public schools do not provide clinical ABA therapy.

12.6    The purported availability of services in public schools is not relevant to assessing the medical necessity of services included in an ABA therapy treatment plan approved by a child's treating provider.

12.7    Plaintiffs allege that Anthem's coverage determinations were based on a concerted effort to reduce costs associated with coverage for ABA therapy rather than the medical necessity of the services for which Anthem denied coverage.

12.8    As a result of Anthem's bad faith breach of its insurance contracts, A.B. and member of the Individual Plan Class are entitled to recover actual damages and their attorneys' fees and costs.

### XIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the members of the Class, pray for judgment against Defendant as follows:

A.    Certification of the proposed Classes;

B.    Appointment of Plaintiff W.P. by and through Kathryn and Chester Pierce as representative of the ERISA Plan Class;

C.    Appointments of Plaintiff A.B. by and through Michael Beck and Joanne Kehoe as representative of the Individual Plan Class;

D.    Appointment of the undersigned counsel as counsel for the Classes;

E.    An order enjoining Defendant or its affiliates, agents, or other related entities, as provided by law, from improperly limiting coverage for ABA therapy, as set forth herein;

F.    An award to Plaintiffs and the Classes of damages and/or equitable relief, as allowed by law;

G.    An award to Plaintiffs and the Classes of attorneys' fees and costs under 29 U.S.C. § 1132(g)(1), or as otherwise allowed by law or equity;

H.    Leave to amend this Complaint to conform to the evidence presented at trial; and

I.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

RESPECTFULLY SUBMITTED AND DATED this 16th day of September, 2016.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Toby J. Marshall, *Admitted Pro Hac Vice*
    Toby J. Marshall, *Admitted Pro Hac Vice*
    Blythe H. Chandler, *Admitted Pro Hac Vice*
    936 North 34th Street, Suite 300
    Seattle, Washington  98103-8869
    Telephone:  (206) 816-6603
    Facsimile:  (206) 319-5450
    Email:  tmarshall@terrellmarshall.com
    Email:  bchandler@terrellmarshall.com

    Syed Ali Saeed (#28759-49)
    SAEED & LITTLE, LLP
    1433 North Meridian Street, Suite 202
    Indianapolis, Indiana  46202
    Telephone: (317) 614-5741
    Facsimile:  1-888-422-3151
    Email:  ali@sllawfirm.com

    *Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Toby J. Marshall, hereby certify that on September 16, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all registered CM/ECF users:

Sally Franklin Zweig (#11367-49)
Kristopher N. Kazmierczak (#19430-49)
KATZ & KORIN, PC
334 North Senate Avenue
Indianapolis, Indiana 46204
Telephone:  (317) 464-1100
Facsimile:  (317) 464-1111
Email:  szweig@katzkorin.com
Email:  kkaz@katzkorin.com

Martin J. Bishop, *Admitted Pro Hac Vice*
Rebecca R. Hanson, *Admitted Pro Hac Vice*
REED SMITH
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606-7507
Telephone: (312) 207-2831
Facsimile: (312) 207-6400
Email: mbishop@reedsmith.com
Email: rhanson@reedsmith.com

*Attorneys for Defendant Anthem Insurance Companies, Inc.*

DATED this 16th day of September, 2016.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Toby J. Marshall, *Admitted Pro Hac Vice*
  Toby J. Marshall, *Admitted Pro Hac Vice*
  936 North 34th Street, Suite 300
  Seattle, Washington  98103-8869
  Telephone:  (206) 816-6603
  Facsimile:  (206) 319-5450
  Email:  tmarshall@terrellmarshall.com

*Attorneys for Plaintiffs*